GROUP HEALTH PLAN, INC., a non-profit Minnesota health maintenance organization; HealthPartners, Inc., a nonprofit Minnesota health maintenance organization; and Medica, a nonprofit Minnesota health maintenance organization and subsidiary of Allina Health System, Plaintiffs,

v.

PHILIP MORRIS INCORPORATED; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; B.A.T. Industries P.L.C.; British–American Tobacco Company Limited; BAT (U.K. & Export) Limited; Lorillard Tobacco Company; Liggett Group Inc.; United States Tobacco Company; Hill & Knowlton, Inc.; The Council for Tobacco Research–U.S.A., Inc.; The Tobacco Institute, Inc.; and the Smokeless Tobacco Council, Inc., Defendants.

No. CIV.98–1036(PAM/JGL).

United States District Court,
D. Minnesota.

April 29, 1999.

Lawrence Zelle, Lawrence T. Hofmann, Richard Michael Hagstrom, Zelle Hofmann Voelbel & Gette, Lewis A. Remele, Jr., Gregory Paul Bulinski, Bassford Lockhart Truesdell & Briggs, Minneapolis, MN, for Group Health Plan, Inc., HealthPartners, Inc.

Lewis A. Remele, Jr., Gregory Paul Bulinski, Bassford Lockhart Truesdell & Briggs, Minneapolis, MN, for Medica.

Peter W. Sipkins, Robert A. Schwartzbauer, Mark John Ginder, Dorsey & Whitney, Minneapolis, MN, Michael R. Geske, Arnold & Porter, Washington, DC, Jack L. Lipson, David Eggert, Charles Spicknall, James Scarboro, Thomas Stoever, Alfred T. McDonnell, Arnold & Porter, Denver, CO, William Maledon, Osborn Maledon, Phoenix, AZ, for Phillip Morris Inc.

James Stuart Simonson, Jonathan M. Redgrave, Gray Plant Mooty Mooty & Bennett, Minneapolis, MN, Jeffrey J. Jones, Jones Day Reavis & Pogue, Columbus, OH, Robert Klonoff, for R.J. Reynolds Tobacco Co.

Jack Michael Fribley, Lori Ann Wagner, Faegre & Benson, Kenneth Bass, Karen DeSantis, Richard A. Rice, for Brown & Williamson Tobacco, Co.

Kyle E. Hart, Richard G. Jensen, Fabyanske Westra & Hart, Kathy McFarland, Mary Elizabeth McGarry, Brian Lake, Ronald M. Neumann, Joseph McLaughlin, Minneapolis, MN, Kathy McFarland, Mary Elizabeth McGarry, Brian Lake, Ronald M. Neumann, Joseph McLaughlin, Jill C. Owens, Simpson Thacher & Bartlett, New York, NY, for B.A.T. Industries.

John Walter Getsinger, Leonard Street and Deinard, Minneapolis, MN, Amy Hendricks, Steven Vollins, for British American Tobacco Co. Ltd., BAT (U.K. & Export) Ltd.

David George Martin, Rider Bennett Egan & Arundel, Minneapolis, MN, Jeffrey S. Nelson, Susan D. Wolfe, J. Patrick Sullivan, Shook Hardy & Bacon, Kansas

City, MO, Elizabeth Hoene Martin, for Lorillard Tobacco Co.

Robert V. Atmore, Steven D. Kelley, Reuben A. Mjaanes, Lindquist & Vennum, Minneapolis, MN, James Stricker, Aaron H. Marks, Nancy E. Straub, for Liggett Group, Inc.

Richard Gary Mark, Diane M. Helland, Eric J. Rucker, Briggs & Morgan, Minneapolis, MN, for U.S. Tobacco Co.

Joseph T. Dixon, Jr, Neil M. Kliebenstein, Henson & Efron, Minneapolis, MN, Marc Rachman, Bruce M. Ginsburg, Bruce M. Ginsberg, Davis & Gilbert, New York, NY, for Hill & Knowlton Inc.

Robert Lawrence Purdy, Kirk O. Kolbo, Maslon Edelman Borman & Brand, Minneapolis, MN, Steven Klugman, Steve Michaels, Debevoise & Plimpton, New York, NY, for Council for Tobacco Research USA, Inc.

George W. Flynn, Flynn & Gaskins, Minneapolis, MN, for Tobacco Institute, Inc.

Geoffrey P. Jarpe, Maun & Simon, Minneapolis, MN, Barry Schaevitz, for Smokeless Tobacco Council, Inc.

Clifford M. Greene, Greene Espel, Minneapolis, MN, pro se.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Defendants' Motion to Dismiss. For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs consist of various health maintenance organizations attempting to recoup healthcare costs they incurred for their members' tobacco-related illnesses. Plaintiffs allege that Defendants conspired to mislead and confuse the public regarding the deleterious effects of tobacco use. Because of this conspiracy, Plaintiffs allege that their enrollees suffered from tobacco-related illnesses, and Plaintiffs were required to pay the accompanying medical costs of those illnesses.

Plaintiffs note that their Complaint is almost identical to the complaint filed in *State of Minnesota v. Philip Morris Inc.,* 551 N.W.2d 490 (Minn.1996). Plaintiffs allege violations of Minnesota's antitrust statutes, violations of Minnesota's consumer protection statutes, conspiracy, a tort theory of special duty, and an equitable theory of unjust enrichment/restitution. Defendants now move to dismiss the First Amended Complaint. Plaintiffs assert that the motion should be denied based on the Minnesota Supreme Court's ruling regarding standing. The Court now turns to address the issues raised in this motion.

## DISCUSSION

### A. Standard of Review

For the purposes of Defendants' Motion to Dismiss, the Court takes all facts alleged in Plaintiffs' Complaint as true. *See Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiffs. *See Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." *Id.; see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court applies these standards in the following discussion.

### B. Collateral Estoppel

Initially, Plaintiffs assert that Defendants are collaterally estopped from litigating the issues raised in their motion because all of the issues were fully decided by the Minnesota Supreme Court in *State of Minnesota v. Philip Morris Inc.,* 551 N.W.2d 490 (Minn.1996) (hereinafter *"State of Minn."*). The Court disagrees. A court may not apply collateral estoppel unless there is a final judgment on the merits. *See Bublitz v. Commissioner of Revenue,* 545 N.W.2d 382, 385 (Minn.1996); *John Morrell & Co. v. Local Union 304A,* 913 F.2d 544, 562 n. 16 (8th Cir.1990).

Here, no final judgment exists. The Minnesota case to which Plaintiffs refer was an interlocutory appeal for a motion to dismiss. An interlocutory appeal is not a final judgment on the merits. *See Carlson v. County of Hennepin,* 428 N.W.2d 453, 457 (Minn.Ct.App.1988). Additionally, in *State of Minn.,* judgment was entered upon settlement and before a verdict was rendered. Accordingly, this Court finds that collateral estoppel does not apply to the motion now before it.

### C. Breach of Special Duty Claim

■ Defendants assert that Plaintiffs cannot bring a claim for common law breach of special duty. In *State of Minn.,* the Minnesota Supreme Court held that any injury experienced by Blue Cross & Blue Shield ("BCBS") was too remote from any alleged breach of duty by tobacco companies. *See id.* at 495; *see also Northern States Contracting Co. v. Oakes,* 191 Minn. 88, 253 N.W. 371, 371–72 (1934). Because the injury to BCBS derived from injuries to its members who smoked, these smokers were deemed to have a more direct interest in the matter. *See id.* Plaintiffs now concede that this claim should be dismissed. Thus, the Court dismisses Count VIII from the First Amended Complaint.

### D. Antitrust Claims

■ Despite finding that BCBS's tort injuries were too remote to allow standing, the *State of Minn.* court found adequate standing on the antitrust claims. *See* 551 N.W.2d at 497. A central issue in the present motion is whether the *State of Minn.* decision requires this Court to allow Plaintiffs to proceed with their state statutory claims. Because the jurisdictional basis for the present suit is diversity, *see* 28 U.S.C. § 1332, *Erie Railroad Co. v. Tompkins* dictates that this Court apply federal procedural law and state substantive law. *See* 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Defendants argue that, regardless of the *Erie* doctrine, *State of Minn.* is inapplicable because it only addressed the limited issue of standing, and not the issues of antitrust injury and proximate cause presently raised by Defendants.

Plaintiffs assert that because injury is a basic element of standing, *State of Minn.* already addressed Defendants' present arguments of remoteness and lack of antitrust injury. In *State of Minn.,* the Minnesota Supreme Court noted that the "only issue before [it was] the question of whether Blue Cross [had] standing to bring a cause of action under any of the four theories upon which it relie[d]." *State of Minn.,* 551 N.W.2d at 493. The court noted that the test for standing in Minnesota is whether the plaintiff has suffered an "injury in fact." *See id.* (citing *Snyder's Drug Stores, Inc. v. Minnesota State Bd. of Pharmacy,* 301 Minn. 28, 221 N.W.2d 162, 165 (1974)). According to the court, the state legislature intended to broadly confer standing when it enacted the antitrust statute. *See id.* The state antitrust statute states that "Any person ... injured directly or indirectly ... may file suit." Minn.Stat. § 325D.57. Rather than analyze this wording in the statute, the court merely concluded: "It is clear that this expansive grant of standing reaches the injuries suffered by Blue Cross." *State of Minn.,* 551 N.W.2d at 496.

The court rejected BCBS's "pass through" defense, which asserted that any increased costs suffered by BCBS were passed through to customers and consumers. Additionally, the court opined that the broad statutory grant of standing was a direct response by the Minnesota legislature to the United States Supreme Court's ruling in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). There, the Court held that indirect purchaser plaintiffs could not use the pass-through theory to establish injury. *See id.* at 745–46, 97 S.Ct. 2061. According to the Minnesota Supreme Court, the legislature's intent to allow standing for indirect purchasers necessarily meant that BCBS had standing.

The *State of Minn.* decision is clearly one of Minnesota substantive law because it analyzes the meaning of a state substantive statute. Thus, under the *Erie* doctrine, this Court is bound by the Minnesota Supreme Court's decision regarding standing. Accordingly, the Court finds that Plaintiffs have standing to bring their state antitrust claims against Defendants. However, the finding that Plaintiffs have standing to bring their claims does not obviate the need for Plaintiffs to meet the more precise requirements of proximate cause. In the present case, the Court does not have sufficient facts upon which it can base such a determination. Therefore, the Court declines to rule on the proximate cause issue without further factual development.

### E. Consumer Protection Statutes

Plaintiffs assert four violations of Minnesota's Consumer Protection Statutes. However, only one relevant allegation of conduct exists in the First Amended Complaint. It refers to executives of Defendant companies testifying before Congress. (*See* First Am. Compl. ¶ 33.) Plaintiffs allege that during this testimony, the executives "knowingly made material misrepresentations and/or omissions ... about tobacco products, health and addiction, and in particular, stated that nicotine is not addictive." (*Id.*) The remainder of the factual assertions in the Complaint make vague references to Defendants' participation in a conspiracy, and thus are not specific enough to be included in the Court's analysis of these claims.

At the outset, the Court is mindful of the Minnesota Supreme Court's ruling in *State of Minn.* that BCBS had standing to pursue its statutory consumer protection claims. *See State of Minn.*, 551 N.W.2d at 496–97. Based on Minnesota Statute section 8.31, the court found standing for three of the consumer protection statutes. This general enabling statute provides that "any person injured ... may bring a civil action." Minn.Stat. § 8.31, subd. 3a. The one remaining consumer protection claim provides its own statutory

grant of standing to any person "likely to be damaged by a deceptive trade practice of another." Minn.Stat. § 325D.45. In addressing the issue of standing, the court followed essentially the same analysis it used for the antitrust standing issue. Based on *State of Minn.*, this Court finds that Plaintiffs have standing for their consumer protection claims. However, Plaintiffs must still adequately plead the elements of each claim. The Court finds that the First Amended Complaint fails in that respect.

First, to sustain their consumer fraud and unlawful trade practices claims, Plaintiffs must allege that Defendants made fraudulent or misrepresentative statements in connection with a sale of goods. *See* Minn.Stat. §§ 325F.69 & 325D.13; *see also Cooperman v. R.G. Barry Corp.*, 775 F.Supp. 1211, 1213–14 (D.Minn.1991) (dismissing a consumer fraud claim because the claim was not predicated on a sale of merchandise). Here, any statements made by Defendants in a congressional hearing are not made in connection with a sale. The First Amended Complaint contains no allegations that Defendants were attempting to sell their products while testifying before Congress. Moreover, Plaintiffs do not allege that they purchased any products from Defendants. Because Plaintiffs did not adequately plead the elements of consumer fraud and unlawful trade practices, these claims must be dismissed.

Second, Plaintiffs' claim for deceptive trade practices is governed by Minnesota Statute § 325D.44, which requires the same analysis as the federal Lanham Act. *See Medical Graphics Corp. v. SensorMedics Corp.*, 872 F.Supp. 643, 649 (D.Minn.1994). The first step of the Lanham Act analysis requires that a false statement be made in a commercial advertising or promotion. *See id.* Four factors must be present for speech to constitute commercial advertising:

(1) the representations must be commercial speech;

(2) they must be made by a defendant who is in commercial competition with the plaintiff;

(3) they must be made for the purpose of influencing consumers to buy defendant's goods or services; and

(4) they must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* at 650 (citing *Gordon & Breach Science Publishers S.A. v. American Inst. of Physics,* 859 F.Supp. 1521, 1536 (S.D.N.Y. 1994)).

As this Court has already pointed out, the only specific statements in Plaintiffs' First Amended Complaint are those made by Defendants at congressional hearings. Regardless of whether these statements constitute commercial speech, they most certainly fail to meet the second and fourth prongs of the commercial advertising test. Defendants are not in competition with Plaintiffs. Moreover, Defendants statements to Congress cannot be considered statements which were disseminated to the relevant purchasing public. In the present case, the relevant purchasing public would be the Defendants' members. Clearly, the above statements were directed toward Congress, and not toward these members. Plaintiffs fail to identify any other specific statements by Defendants which would constitute commercial advertising. Accordingly, their deceptive trade practices claim must fail.

 Third, Plaintiffs' claim for False Advertising is governed by Minnesota Statute section 325F.67, which makes it illegal for a person or corporation to make a false or misleading representation in an advertisement to the public. *See* Minn. Stat. § 325F.67. Plaintiffs' claim under this statute fails for the same reasons that their deceptive trade practices claim fails: the First Amended Complaint does not identify any statements made by Defendants which amount to commercial advertising. Statements made to Congress surely are not to be considered a form of advertising. Therefore, Plaintiffs' false advertising claim is dismissed.

### F. Civil Conspiracy Claim

 Count VII of the First Amended Complaint contains a claim for civil conspiracy. Defendants assert that this claim must be dismissed because all of Plaintiffs' underlying claims fail to state a claim upon which relief can be granted. However, this Court has ruled that, at this stage in the litigation, Plaintiffs' state antitrust claims must be allowed to proceed. Therefore, the Court finds that this argument for dismissal of the conspiracy claims lacks merit.

Alternatively, Defendants contend that Plaintiffs fail to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8. Although this Court recognizes that Plaintiffs' allegations regarding the conspiracy are, for the most part, general and vague, the Court does not believe it would be proper to dismiss this claim based solely on Rule 8. Rather, further factual development should take place, after which the Court can more adequately address these claims.

### G. Restitution/Unjust Enrichment Claim

 Unjust enrichment claims are allowed when a party not entitled to a benefit knowingly receives something of value, and it would be unjust to allow that party to retain that value. *See Southtown Plumbing, Inc. v. Har–Ned Lumber Co.,* 493 N.W.2d 137, 140 (Minn.Ct.App.1992). A party may only seek equitable relief when there is not an adequate remedy at law. *See Michael–Curry Cos. v. Knutson Shareholders Liquidating Trust,* 423 N.W.2d 407, 410 (Minn.Ct.App.1988). Here, although Plaintiffs do not assert a claim for subrogation, they certainly have a right to do so. Such a contractual subro-

gation right is considered a remedy at law. *See Airlines Reporting Corp. v. Norwest Bank*, 529 N.W.2d 449, 452 (Minn.Ct.App. 1995) (refusing to apply equitable principles where the parties had a contractual agreement); *Suchy v. Illinois Farmers Ins. Co.*, 574 N.W.2d 93, 96 (Minn.Ct.App. 1998) (noting the distinction between equitable and conventional subrogation). Thus, equitable relief is not available to Plaintiffs.

Moreover, Plaintiffs have not identified a benefit unjustly conferred upon Defendants which would warrant Plaintiffs receiving redress. The First Amended Complaint states that "Defendants ... reaped substantial and unconscionable profits from the sale of tobacco products." (First Am. Compl. ¶ 83.) Even if true, and even if unjust, these profits were paid by the Defendants' enrollees. If Plaintiffs wish to recover for costs paid for or on behalf of their enrollees, they must do so through subrogation.

Finally, the Court disagrees with Plaintiffs' contention that *State of Minn.* mandates that the unjust enrichment claim stand. There, the court held that because of Blue Cross's "associational standing" to its members, it was allowed to proceed with an equitable claim for injunctive relief only. *See State of Minn.*, 551 N.W.2d at 498. However, there, the court based its holding on *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In *Hunt*, the Court noted that associational standing is allowed if " '[t]he association ... allege[s] that its members ... are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.' " *Id.* at 342, 97 S.Ct. 2434 (quoting *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

In the present case, Plaintiffs' mention nothing about associational standing in their First Amended Complaint. While it may be true that Plaintiffs' alleged injuries derive from their enrollees' alleged injuries, it does not change the fact that Plaintiffs failed to plead associational standing. Further, Plaintiffs' unjust enrichment claim states that Plaintiffs were required to pay for smoking-related medical costs. This alleged injury belongs to Plaintiffs', not to their enrollees. Thus, Plaintiffs fail to satisfy *Hunt*. For these reasons, the Court dismisses Plaintiffs' unjust enrichment claim.

**H. Damages Claims**

Lastly, Defendants assert that Plaintiffs' entire First Amended Complaint should be dismissed because the damages claimed are too speculative. According to Defendants, Plaintiffs' damages claim is completely "dependent upon the hypothetical actions of third-parties, i.e., the smoking enrollees, who are not before the court in this action." (Defs.' Mem. Supp. at 22.) Plaintiffs contend that this argument is merely a restatement of Defendants' earlier argument regarding remoteness and proximate cause.

Under Minnesota law, damages which are too speculative cannot be recovered in a legal action. *See Jackson v. Reiling*, 311 Minn. 562, 249 N.W.2d 896, 897 (1977). The Court recognizes that separate analyses must be conducted for antitrust proximate causation and speculative damages theories. However, both issues are at least in part related to Defendants' remoteness argument. Thus, the lack of factual development which prohibited the Court from ruling on the proximate cause issue also prohibits the Court from ruling on the damages issue. Accordingly, at this early stage of the litigation, the Court declines to determine whether Plaintiffs' alleged damages are too speculative.

**CONCLUSION**

The Court finds that Defendants are not collaterally estopped from attacking Plaintiffs' claims. Based on the Minnesota Supreme Court's decision in *State of Minn.*, Plaintiffs' maintain standing for their state antitrust claims. However, the Court declines to rule on the issue of proximate

cause with respect to the antitrust claims. Because the antitrust claims survive dismissal, the conspiracy claim also survives. Additionally, the Court finds that Plaintiffs' consumer protection claims and unjust enrichment claims must be dismissed for failure to state a claim upon which relief can be granted. Finally, the Court declines to rule on Defendants' argument that Plaintiffs' damages claim is too speculative. Therefore, Defendants' motion to dismiss is granted in part and denied in part.

Accordingly, **IT IS HEREBY ORDERED** THAT:

1. Defendants' Motion to Dismiss (Clerk Doc. No.33) is GRANTED IN PART AND DENIED IN PART;

2. Count VIII of the First Amended Complaint (Clerk Doc. No. 5) is DISMISSED WITH PREJUDICE; and

2. Counts III, IV, V, VI, and IX of the First Amended Complaint (Clerk Doc. No. 5) are DISMISSED WITHOUT PREJUDICE.